Maria GONZALEZ and Vincent
Gonzalez, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. 87 Civ. 8492 (PNL).

United States District Court,
S.D. New York.

July 15, 1988.

Robert S. Michaels, New York City, for plaintiffs.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Allan N. Taffet, Asst. U.S. Atty., New York City, for defendant.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

This is a personal injury action brought pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671, *et seq.* The Government moves to dismiss for lack of subject matter jurisdiction. The Government contends that the acts complained of are "discretionary functions" for which liability does not lie under the FTCA. Plaintiffs respond that defendant's negligent acts were operational choices rather than policy decisions and fall within the Act's general waiver of sovereign immunity. Because the court finds that plaintiffs' allegations describe a classic common law tort rather than a governmental decision guided by concerns of public policy, the motion to dismiss is denied.

### Background

In evaluating the Government's motion to dismiss, the court assumes the truth of the allegations in the complaint. *Bass v. Jackson*, 790 F.2d 260 (2d Cir.1986). Plaintiff Maria Gonzalez was injured by a falling metal stanchion in the United States Post Office at 90th Street and Third Avenue in Manhattan.[1] A fellow postal patron

---

1. Plaintiff Maria Gonzalez seeks $75,000 damages for serious and lasting personal injuries.

leaned on the rope connecting stanchions which defined the "queue" of those waiting for service at the station's windows. Because of the negligence of postal employees in operating (or maintaining) the system of ropes and stanchions, the stanchion fell and injured Ms. Gonzalez. Specifically, plaintiffs contend that the government negligently chose an inherently dangerous design of dividers with metal "posts supporting [the] divider rope [which] were not secured to the ground" and were thus unstable and likely to fall in response to pressure on the connecting ropes.[2]

The Government's response centers on its contention that a decision was made at a central, policy level of the United States Postal Service to employ a flexible system of portable stanchions at postal stations nationwide.[3] (The planners envisioned a system which would permit the movement of ropes and stanchions to create different configurations as the need arose.) Plaintiff's allegation that the design was the cause of her injuries fails, defendant contends, because the Government is immune from liability for injuries caused by such a "policy" decision.

### Discussion

In the Federal Tort Claims Act, the United States has partially waived its traditional sovereign immunity from tort liability. 28 U.S.C. § 1346(b) vests the district court with jurisdiction over damage actions

> for injury or loss of property, or personal injury or death caused by the negligence or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the

United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

There are, however, a number of torts for which Congress specifically declined to waive immunity. Relevant here is the exception for injuries caused by a government employee performing a "discretionary function." Section 2680(a) provides that the FTCA shall not apply to

> [a]ny claim ... based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

This section creates a jurisdictional bar to suit because it deprives federal courts of subject matter jurisdiction over tort actions based on the exercise of discretionary functions by federal employees. *Garcia v. United States,* 826 F.2d 806, 809 (9th Cir. 1987); *Baird v. United States,* 653 F.2d 437, 440 (10th Cir.1981), *cert. denied,* 454 U.S. 1144, 102 S.Ct. 1004, 71 L.Ed.2d 296 (1982).

The Government seeks dismissal of the Gonzalez' claims on the ground that the challenged decision to install an allegedly inherently dangerous queuing system was made by employees in the exercise of discretionary duties. By this contention, defendant seeks a novel, expansive reading of the discretionary function exception. The court is compelled by the statute and the consistent interpretation rendered it to reject the broadening of the discretionary function exception sought by defendant.

Plaintiff Vincent Gonzalez seeks $25,000 damages for deprivation of the services, companionship, love and affection of Maria Gonzalez as a result of her injury.

2.  Plaintiffs appear to allege that the rope and stanchion system was either inherently dangerous or negligently designed. In their brief, plaintiffs note that an alternative design which might have avoided the injury would include ropes which disconnect from the metal poles in response to pressure. In addition plaintiffs assert (in the brief) a negligent failure to post warning signs.

3.  The single affidavit submitted by the Government does not disclose whether the Postal Service recommended the use of a particular model stanchion.

Nor does it establish whether individual postal stations were required to implement the queuing system described.

Moreover, the affidavit reflects no facts concerning the installation and maintenance of the queuing system at the 90th Street postal station.

Scope of Discretionary Function Exception

■ The United States is generally liable to the same extent as other property owners for personal injuries to invitees on federal property. *See e.g., Cooks v. United States*, 815 F.2d 34, 35 (7th Cir.1987) (liability for sidewalk defects); *Haugen v. United States*, 492 F.Supp. 398, 401 (E.D.N.Y. 1980) (New York landowner liability standard), *aff'd without opinion*, 646 F.2d 560 (2d Cir.1980); *Salim v. United States*, 382 F.2d 240 (5th Cir.1967) (duty to maintain post office steps in safe condition); *Blaine v. United States*, 102 F.Supp. 161 (E.D. Tenn.1951) (liability for negligent maintenance of post office sidewalk). In fact, injury to a patron on the grounds of a post office caused by the negligence of a federal employee has specifically been found to fall outside the exception of Section 2680(a). *American Exchange Bank of Madison v. United States*, 257 F.2d 938, 941 (7th Cir. 1958) (decision not to install handrail on post office steps not discretionary). *See also Miller v. United States*, 710 F.2d 656, 665, 665 n. 16 (10th Cir.), *cert. denied*, 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983) (negligent acts in "operation of a federal facility" not within Section 2680(a)). Postal patrons, as invitees, are owed the same duty of care imposed by state law on all property owners. *Doe v. United States*, 718 F.2d 1039 (11th Cir.1983).

Defendant's attempt to evade the force of the clear language of the statute and precedent upholding liability for personal injuries of patrons at postal stations is inconsistent with the narrow construction given the discretionary function exception. Although most acts of federal employees involve some element of discretion, the exercise of choice alone is inadequate to qualify for the protection of this provision. Only those acts which stem from the exercise of judgment grounded in concerns of public policy are immunized as discretionary functions.

The Supreme Court has recently reaffirmed that the "basis for the discretionary function exception was Congress' desire to 'prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through an action in tort.'" *Berkovitz v. United States*, —— U.S. ——, ——, 108 S.Ct. 1954, 1959, 100 L.Ed.2d 531 (1988) (*quoting United States v. Varig Airlines*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984)). The Court held that the exception "applies only to conduct that involves the permissible exercise of policy judgment." —— U.S. at ——, 108 S.Ct. at 1960.[4] *See also Boyle v. United Technologies Corp.*, —— U.S. ——, ——, 108 S.Ct. 2510, 2517, 101 L.Ed.2d 442 (1988) (decision involving "judgment as to the balancing of many technical, military, and even social considerations, including specifically the trade-off between greater safety and greater combat effectiveness" within discretionary function exception).

■ Since the Supreme Court first construed the exception, it has been settled that this narrow provision does not immunize the government for torts which do not arise from the exercise of discretion grounded in considerations of public policy. In *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the Court reviewed the Act's legislative history and concluded that Congress aimed specifically to waive immunity for "ordinary common-law torts" committed by its agents. In support of its conclusion that Section

---

**4.** This narrow construction of the discretionary function exception is entirely consistent with the oft-quoted language of *Dalehite v. United States*, 346 U.S. 15, 35–36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953):

It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. *Where there is room for policy judgment and decision there is discretion.* (Emphasis added.)

Administrative determinations which turn on the exercise of policy judgment may well be insulated from liability. On the other hand, choices made by officials at whatever level which do not turn on considerations of public policy are not protected by the exception for discretionary functions.

2680(a) did not impair liability for such injuries, the Court noted that "congressional thought was centered on granting relief for the run-of-the-mine accidents." To the extent federal employees commit ordinary, non-governmental torts, the statute renders the Government as accountable as any other tortfeasor. *Indian Towing Co. v. United States*, 350 U.S. 61, 68–69, 76 S.Ct. 122, 126–127, 100 L.Ed. 48 (1955).

■ In light of Congress' intent, the discretionary function exception has been held to protect only activities which—because they further policy goals—are uniquely governmental. To the extent federal employees in the course of their work engage in activities which are not specifically tied to the policy mission of their agencies, the United States is held liable to the same extent as any other employer. *Dalehite*, 346 U.S. at 34, 73 S.Ct. at 967. ("We know that the draftsmen did not intend [Section 2680(a)] to relieve the Government from liability for such common law torts as an automobile collision caused by the negligence of an employee.")

In addition to personal injuries on government property, the limited exception of Section 2680(a) has been held generally inapplicable to torts arising from conduct of government actors which can be judged by general standards of reasonableness without requiring courts to pass upon policy justifications. The Supreme Court recently noted that if a "determination involves the application of objective scientific standards" rather than "policy judgment," the exception is unlikely to apply. *Berkovitz*, — U.S. at —, 108 S.Ct. at 1963. The adjudication of a claim of inherently dangerous design such as is asserted here turns on just such objective criteria. In rejecting the contention that Section 2680(a) protects the Government from liability for negligent design decisions in a flood control project, the Eleventh Circuit noted that some design decisions might fall within the exception if "social, economic and political policy may significantly influence" them. But "in the absence of such a policy decision, the [Government] must be held to the same professional standards of reasonableness and due care that a private engineer faces when he plies his trade." *Alabama Elec. Co-op v. U.S.*, 769 F.2d 1523, 1531 (11th Cir.1985).[5]

The Challenged Decision

■ The Government's decision to employ a particular method of queue control at postal stations is not a policy decision of the type Congress envisioned in the discretionary function exception. It is an internal operational choice which involves no uniquely governmental considerations. *Indian Towing Co. v. United States*, 350 U.S. 61, 64, 76 S.Ct. 122, 124, 100 L.Ed. 48 (operation of lighthouse involves issue "of liability for negligence at what this Court has characterized the 'operational level' of governmental activity."). Despite the Government's attempt to paint the choice of "queuing system" as an important matter of Postal Service policy, for purposes of the FTCA it is no different than a choice of cement for sidewalk repairs. Just as the government is properly held liable for injuries from a sidewalk with an unrepaired fault, *Blaine v. United States*, 102 F.Supp. 161 (E.D.Tenn.1951), or a sidewalk buckling due to defective cement, the United States is not immune from liability for injuries caused by an inherently dangerous metal stanchion in a post office lobby.[6] State common law imposes on the Government the same duty of reasonable care it imposes on any property owner.[7]

**5.** *See also United States v. DeCamp*, 478 F.2d 1188, 1192 (9th Cir.), *cert. denied*, 414 U.S. 924, 94 S.Ct. 232, 38 L.Ed.2d 158 (1973) (decision "not predicated upon considerations of public policy but upon general standards of safety. Accordingly, state tort law can capably measure the reasonableness of the engineer's judgment in applying professional standards of safety.... [where] the merits of th[e] case are not laden with political questions or other elements suggesting nonjusticiability").

**6.** To the extent considerations of safety or efficiency are considered in such a choice, they are relevant in the same way as they are to any private entity which invites patrons onto its property. A balancing of such factors does not necessarily render a decision a policy choice.

**7.** Defendant cites *Doe v. United States*, 718 F.2d 1039, 1042 (11th Cir.1983), for the proposition that decisions of the Postal Service regarding location and operating hours of a station are

The Government contends that "the decision by senior officials of the Postal Service to implement a 'rope and stanchion' queuing system to provide more orderly, fair and efficient service to postal customers is not amenable to attack under the FTCA" because "the Government undertook to regulate or control an activity" in furtherance of "the nationwide policy for development and implementation of cost effective retail postal facilities." Gov. Brief at 11, 13. In support of this proposition, the Government cites *United States v. Varig*, 467 U.S. at 813–814, 104 S.Ct. at 2764 (exception "intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals").

This argument is unavailing. The challenged actions did not arise out of a regulatory, governmental "policy" in furtherance of the agency's statutory mission. The only activity being "regulated" here is the movement of patrons within a post office. It is not the kind of policy decision protected by the statute. The queuing "system" at issue has no more to do with the governmental functions of the Postal Service than do the sidewalks, doors and floor surfaces of post offices. Labeling the use of ropes and stanchions a queuing "system" does

not vitiate the fact that the challenged decision is not a policy determination.

The challenged "queuing system" decision involves neither governmental regulation of private activity, *United States v. Varig*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) (air transportation safety), nor the advancement of a policy goal of the Postal Service. The choice of stanchions, like the choice of windows or floor wax, is an internal operational decision which does not entail the concern with public policy, social or economic judgments that characterizes discretionary functions under Section 2680(a). *American Exchange Bank of Madison v. United States*, 257 F.2d 938, 941 (7th Cir.1958) ("whether a handrail should be installed as a safety measure on wide stone steps involves action at the operational level and would seem to involve no more discretion than fixing a sidewalk on post office grounds that might be in need of repair"). Plaintiffs' allegations describe acts of federal employees which fall squarely within the jurisdiction of the Federal Tort Claims Act.[8]

### Conclusion

Personal injuries at post offices resulting from negligence of federal employees are precisely the kind of "run-of-the-mine acci-

---

discretionary acts for which liability cannot lie to a patron assaulted in the station's lobby. While the opinion concluded that such policy decisions fall within the exception of Section 2680(a), defendant fails to note that the Court proceeded to examine "additional facts" from which government liability might derive. In fact the opinion in *Doe* supports the conclusion that negligence in the operation of the postal station (as opposed to misjudgement in the policy decision regarding its location) could give rise to government liability for plaintiff's injuries.

**8.** *See Caban v. United States*, 671 F.2d 1230, 1233 (2d Cir.1982) (exception covers only "activities that require the alleged tortfeasor to consider and weigh competing policies in arriving at his decision." Provision excludes courts "especially from questions involving 'not negligence but social wisdom, not due care but political practicability, not reasonableness but economic expediency." *(quoting Blessing v. United States*, 447 F.Supp. 1160, 1170 (E.D.Pa.1978)); *Hendry v. United States*, 418 F.2d 774, 783 (2d

Cir.1969) ("complaints attacking discretionary decisions may frequently raise questions which are political and nonjusticiable in nature, but here the judgments arrived at by the doctors are not different in kind or complexity from those which courts are accustomed to entertain when tort suits are bought [sic.] against private physicians"); *Andrulonis v. United States*, 593 F.Supp. 1336, 1339 (N.D.N.Y.1984) (conduct of government scientist in development of rabies vaccine "presents the issues of negligence in the exercise of professional and scientific judgment rather than policymaking and a concomitant balancing of competing considerations in determining the public interest").

*See also, Peoples National Bank of Huntsville v. Meredith*, 812 F.2d 682, 685 (11th Cir.1987) ("It is not sufficient for the government to demonstrate that some choice was involved in the decisionmaking process. That showing can made in almost every case. . . . the nature of the judgment must also call for the balancing of policy considerations." *(quoting J.H. Rutter Rex Manufacturing Company v. U.S.*, 515 F.2d 97, 99 (5th Cir.1975)).

dents" for which Congress intended to waive immunity in the Federal Tort Claims Act. *Dalehite,* 346 U.S. at 28 n. 19, 73 S.Ct. at 964 n. 19. The agency's decision to implement nationwide a "system" of ropes and stanchions at postal stations does not involve the exercise of discretion in further-ance of the policy objectives of the Postal Service. Defendant has failed to demon-strate that the challenged decision is prop-erly characterized as anything other than an internal, operational choice of fixtures for which the FTCA anticipates the Govern-ment is properly answerable in tort to the same extent as a private employer. The Government cannot escape the liability clearly envisioned by the statute by de-scribing the challenged decision as a "poli-cy" matter.

Because the decision of the Postal Ser-vice to adopt a particular design of queuing arrangement does not involve the exercise of any policy-related "discretionary func-tion or duty," this exception to the general waiver of sovereign immunity is inapplica-ble. This court has jurisdiction of plain-tiffs' claims under 28 U.S.C. § 1346(b). Defendant's motion to dismiss is denied. SO ORDERED.