**Patsy L. RAYMOND, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civil A. No. 95–1277–DES.**

United States District Court,
D. Kansas.

April 19, 1996.

Zackery E. Reynolds, Fort Scott, KS, for plaintiff.

Stephen K. Lester, Office of United States Attorney, Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on the defendant's motion for summary judgment (Doc. 22). The plaintiff brings her action pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680.

### I. BACKGROUND

On May 20, 1992, the plaintiff visited the post office in Waverly, Kansas, to pick up her mail. It was misting at the time the plaintiff entered the building. Outside the door to the post office, between the door and the sidewalk, is a triangle-shaped area covered with terrazzo tile. Upon leaving the building, Ms. Raymond slipped and fell. The plaintiff states that she landed on her back, with her body from the waist up on the terrazzo tile. There was no mat or carpet on the tile at the time of the plaintiff's accident. Ms. Raymond broke her ankle as a result of the fall.

The plaintiff maintains that prior to her accident, the postal service had placed a rubber backed carpet in the entryway to the building, especially during and after wet weather. The defendant states that it never placed any such mat until after the plaintiff's accident. The parties also disagree as to whether there is a grade change at the entrance to the post office. The defendant maintains that there is no grade change, while the plaintiff alleges that there is an incline of several inches in the entryway to the building.

The plaintiff claims that the postal service was negligent in (a) failing to properly maintain the front entryway to the post office by replacing the terrazzo surface, and by not placing a handrail or other safety device in the area; and in (b) failing to actively moni-

tor weather conditions by placing a mat or other item in the post office's entryway.

## II. INTRODUCTION

### A. Summary judgment standard

■ A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1985). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

■ The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1985). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. at 2552–53.

■ Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1985). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judg-

ment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. at 2552. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552–53.

■ A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. at 2511.

### B. Discretionary function exception to FTCA

28 U.S.C. § 1346(b) provides that:

> the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

■ Section 1346(b) does not apply, however, to "[a]ny claim based upon ... the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government...." 28 U.S.C. § 2680(a). If the "discretionary function" ex-

ception applies, the district court lacks subject matter jurisdiction to hear the suit. *Domme v. United States*, 61 F.3d 787 (10th Cir.1995). The defendant argues that its decision whether to install a handrail at the entrance to the post office, and whether to replace the terrazzo tile or place a covering at the entrance, falls within the discretionary function exception to the FTCA.

■ The determination of whether the discretionary function exception bars a suit against the government requires a two-part inquiry. First, the court considers whether the challenged action "is a matter of choice for the acting employee." *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). If the government's conduct involves an element of judgment, the court must then decide "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* at 536, 108 S.Ct. at 1959. The discretionary function exception protects only "governmental actions and decisions based on considerations of public policy," i.e., decisions " 'grounded in social, economic, and political policy.' " *Id.* at 537, 108 S.Ct. at 1959 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984)).

The defendant cites several cases in which courts held that the discretionary function exception operated to bar the plaintiff's claim. In *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), the Supreme Court found that the government's selection of the appropriate design for military equipment was a discretionary function within the meaning of 28 U.S.C. § 2680(a), in that the government's decision involved a trade-off between greater safety and greater combat effectiveness. *Id.* at 511, 108 S.Ct. at 2518. The exception thus barred the plaintiff's claim that United Technologies, who had built a helicopter for the United States, had designed a defective escape system. *Id.* Similarly, the Tenth Circuit held in *Domme v. United States* that the Department of Energy's supervisory activities in regard to a privately owned laboratory were discretionary, and that the Department's procedures reflected a balancing of various policy considerations, including environmental protection, safety of employees, and optimum use of resources. 61 F.3d at 791–93. The government was therefore immune from suit by an electrician injured in a planned electrical outage conducted by the laboratory. *Id.* at 793. *See also Black Hills Aviation, Inc. v. United States*, 34 F.3d 968, 976 (10th Cir.1994) (discretionary function exception applied where Army's decision to release civilian aircraft crash site involved trade-off between more complete investigation into the cause of the crash and resumption of important military missile tests); *Kiehn v. United States*, 984 F.2d 1100, 1105 (10th Cir.1993) (discretionary exception applied where National Park Service's decision not to post warning signs in remote areas of national monument required balancing of public policy objectives pertaining to resource allocation, visitor safety, and scenic preservation).

The court finds that the situation presented in the instant matter, however, is more analogous to another line of cases. The plaintiff in *Smith v. United States*, 546 F.2d 872 (10th Cir.1976), was injured when he fell into a super-heated thermal pool at Yellowstone National Park. *Id.* at 874. The Tenth Circuit rejected the defendant's argument that the decision not to post warnings in thermal areas implemented a policy to conserve the scenery, and that therefore the discretionary function exception applied. *Id.* at 876–77. The court held that the government's decision not to warn of known dangers or provide safeguards could not rationally be deemed the exercise of a discretionary function. *Id.* at 877.

The plaintiff's husband in *Boyd v. United States*, 881 F.2d 895 (10th Cir.1989), was killed when he was struck by a boat while swimming in a lake under the jurisdiction of the Army Corps of Engineers. *Id.* at 896. The court agreed with the defendant that the government's decision not to zone the lake for swimming constituted an exercise of discretion. *Id.* at 897. The government's alleged omission, however, failed the second prong of the *Berkovitz* test, in that the government's decision did not "implicate any social, economic, or political policy judgments

with which the discretionary function is concerned." *Id.* at 898.

The Tenth Circuit distinguished the facts in *Kiehn v. United States* from the situations presented in *Smith v. United States* and *Boyd v. United States.* In both *Smith* and *Boyd,* the failure to warn was not part of a larger policy objective; rather, "it would be difficult to understand what policy factors could have been considered in choosing not to warn the public." *Kiehn,* 984 F.2d at 1104 n. 4. In *Smith,* the decision not to warn was "'not related to any policy decision, but to [a perceived] lack of need for warning.'" *Id.* (quoting *Smith,* 546 F.2d at 877 n. 5).

 Similarly, the government has not shown in the instant case that its decision not to install a handrail or place a mat on the terrazzo floor in front of the post office was related to a policy judgment. Unlike the situation in the cases which the government cites, there is no evidence that the postal service undertook to weigh any social, economic, or political considerations. As in *Smith,* the decision not to install a handrail or place a mat was apparently related to a perceived lack of need for such action, rather than any policy considerations.

The government asserts that the discretionary function exception "applies to the every day decisions that must be made in the operation of the government." In *Gonzalez v. United States,* 690 F.Supp. 251 (S.D.N.Y. 1988), however, the court relied on the Tenth Circuit's decision in *Miller v. United States* to support its proposition that negligent acts in the "operation of a federal facility" are not excepted by 28 U.S.C. § 2680(a). *Id.* at 253 (quoting *Miller,* 710 F.2d 656, 665 (10th Cir. 1983), *cert. denied,* 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983)). The facts in *Gonzalez* are similar to the facts in the instant case. The plaintiff in *Gonzalez* was standing in line at the post office when a metal stanchion used to define the waiting queue fell on her. *Id.* at 251–52. The court found that the government's decision to employ a particular method of queue control at post offices was not a policy decision which Congress sought to protect. *Id.* at 254. The discretionary function exception protects only activities which, because they further policy

goals, are uniquely governmental. *Id.; see also American Exchange Bank v. United States,* 257 F.2d 938, 941 (7th Cir.1958) (decision not to install handrail on post office steps was not discretionary).

We find that the postal service's alleged negligence in failing to provide a handrail or a mat or in failing to replace the terrazzo tile in front of the Waverly Post Office is not the result of a governmental decision based on considerations of public policy, and is therefore not subject to the discretionary function exception in 28 U.S.C. § 2680(a). Having concluded that the government has thus waived its sovereign immunity pursuant to 28 U.S.C. § 1346(b), we now turn to the defendant's argument that it did not breach any duty of care owed to Ms. Raymond.

#### C. *Defendant's duty of care*

The government cites *Madison v. Key Work Clothes, Inc.,* 182 Kan. 186, 318 P.2d 991 (1957), *Wilson v. Goodland State Bank,* 5 Kan.App.2d 36, 611 P.2d 171 (1980), and *Collins v. American Drug Stores, Inc.,* 878 F.Supp. 182 (D.Kan.1995), for the proposition that an abutting property owner has no duty to keep public sidewalks free from ice and snow. These cases are distinguishable from the instant matter, however. Ms. Raymond claims that she fell not on a public sidewalk, but upon terrazzo tile outside the door to the Waverly Post office. According to the plaintiff, she fell in an enclave surrounded on three sides by the post office building, in an area that is used only by postal patrons. The *Madison* court distinguished the situation where a plaintiff falls on a public sidewalk from the case where a plaintiff falls in an area under the control of the defendant. 318 P.2d at 997 (citing *Teague v. Boeing Airplane Co.,* 181 Kan. 434, 312 P.2d 220 (1957)).

The government also refers the court to *Agnew v. Dillons, Inc.,* 16 Kan.App.2d 298, 822 P.2d 1049 (1991). The Kansas Court of Appeals held in *Agnew* that "a business proprietor does not breach the duty of ordinary care owed to invitees to keep premises in a reasonably safe condition by not removing accumulated precipitation from exterior surfaces during a winter storm and a reasonable

time thereafter, absent unusual circumstances." *Id.* at 1054. Unlike the defendant in the instant case, however, the defendant in *Agnew* had placed a mat at the entrance to its store. *Id.* at 1051. The *Agnew* court also held that a jury could draw an inference of causation from the defendant's failure to provide handrails. *Id.* at 1055.

Ms. Raymond contends that there exists an issue of fact as to whether the terrazzo tile in the entryway of the Waverly Post Office became slippery when wet, thereby constituting a dangerous condition. The plaintiff further maintains that the fact that the defendant usually covered the tile with a rubber backed carpet in wet weather indicates that the defendant had knowledge of the dangerous condition. Ms. Raymond cites *Bingham v. Hillcrest Bowl, Inc.,* 199 Kan. 40, 427 P.2d 591 (1967), in support of her argument. The plaintiff in *Bingham* was injured when she slipped and fell on the defendant's terrazzo floor. *Id.* at 593. The plaintiff presented expert testimony that a terrazzo floor is extremely slippery and dangerous when wet. *Id.* at 595. The court found that the fact that the bowling alley customarily covered the area with a rubber runner in damp weather showed that the defendant was aware of the dangerous condition, and held that whether the defendant should have taken corrective action on the day of the accident was a question for the jury. *Id.*

The plaintiff also argues that the terrazzo tile at the Waverly Post Office sloped downward from the threshold of the doorway, thereby contributing to the dangerous condition. Ms. Raymond relies on *Gaitskill v. United States,* 129 F.Supp. 621 (D.Kan.1955), in which the plaintiff slipped and fell on a ramp at a Veterans' Hospital. *Id.* at 622. In holding for the plaintiff, the court stated that "[o]rdinary reason recognizes that the incline of the ramp made such walkway much more dangerous than walks constructed on the level and some special attention should have been given such ramp to reduce the hazard." *Id.* at 623.

■■■■■ Under Kansas law, an occupier of land owes a duty of reasonable care under all the circumstances to invitees and licensees who enter upon the land. *Jones v. Hansen,*

254 Kan. 499, 867 P.2d 303, 310 (1994). Factors a court must consider in determining whether a land occupier exercises reasonable care include the "foreseeability of harm to the entrant, the magnitude of the risk of injury to others in maintaining such a condition of the premises, the individual and social benefit of maintaining such a condition, and the burden upon the land occupier and/or community, in terms of inconvenience or cost." *Id.* at 310. The government has failed to show that under the applicable law, there exists no genuine issue of material fact as to whether the postal service breached a duty of care owed to the plaintiff. The court thus denies the defendant's motion for summary judgment.

**IT IS THEREFORE BY THE COURT ORDERED** that the defendant's motion for summary judgment (Doc. 22) is denied.